STATE EX REL. BARNEY, APPELLANT, v. HAWKINS ET AL., RESPONDENTS.

(No. 6,148.)

(Submitted June 1, 1927. Decided June 24, 1927.)

[257 Pac. 411.]

*Office and Officers—Constitutional Law—Ineligibility of Legislator for Appointment to "Civil Office" Under State—Construction of Provision.*

Office and Officers—Constitution—"Civil Office"—Definition.
1. *Held,* that the words "civil office" as used in section 7 of Article V, Constitution of Montana, in providing that no senator or representative shall, during the term for which elected, be appointed to any civil office, mean any public office not of a military character.

Same—What Constitutes a Public Office of a Civil Nature.
2. To make any position of employment a public office of a civil nature it must be created by the Constitution or by the legislature or created by a municipality pursuant to authority delegated to it; it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature and by it placed under the control of a superior officer or body; it must

1. See 22 R. C. L. 383.
2. Right to hold two offices at same time, see notes in 2 **Ann. Cas.** 281; 10 **Ann. Cas.** 697; **Ann. Cas.** 1915A, 525.

[79 Mont. 506.]

have permanency and continuity, and the incumbent must take and file an oath, hold a commission and give an official bond, if required by proper authority.

Same—Auditor of Board of Railroad Commissioners not Holder of a "Civil Office."

3. Under the above rule *held,* that an employee of the state board of railroad commissioners appointed under its authority to employ "other assistants" and styled by it "auditor" who at the time of his appointment was a member of the legislature, does not hold a "civil office" under the state, and that therefore his appointment does not violate the above provision (par. 1) of section 7 of Article V of the Constitution.

---

[1, 2]  Civil Office, 11 C. J., p. 797, n. 79, 80, 82.  Civil Officer, 11 C. J., p. 797, n. 84.

[3].  Officers, 29 Cyc., p. 1363, n. 16, 17, 18, p. 1364, n. 19, 23, 28, p. 1365, n. 29, p. 1366, n. 33, 34, p. 1368, n. 53 New, p. 1373, n. 96 New, p. 1384, n. 99 New; p. 1386, n. 22 New, p. 1431, n. 4.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

INJUNCTION proceeding by the State, on the relation of Julius Barney, against R. N. Hawkins, Secretary of State, and others constituting the State Board of Examiners. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. H. S. Hepner,* for Appellant, submitted a brief and argued the cause orally.

The only question in the case is whether the position of auditor under the board of railroad commissioners is a civil office. For if it is not a civil office, and Reed is a mere employee of the state, he cannot as auditor exercise any of the sovereign powers of the three departments of government. He must be a civil officer in order to confound the legislative function with the executive function.

It will be noted that the prohibition (section 7 of Article V) of the Constitution is addressed against holding by a legislator of "any civil office under the state." The prohibition is not restricted to a public office but is broad enough to cover all civil offices. Our Code (sec. 50, Rev. Codes 1921) classifies the public officials of this state as either (1) legislative, (2) executive, (3) judicial, (4) ministerial, and while the classifi-

cation, according to section 50, is not to be construed as defining the legal powers of either class, there is a further definition of executive officers as either (1) civil or (2) military (sec. 109, Rev. Codes Mont. 1921). Hence it would seem, in view of the fact that Reed functions under the executive department of state and in view of the fact that he is not a military officer, that he must be a civil officer, for there is no refinement of classification other than civil and military. It is true that the Political Codes abound with phrases making a distinction between officers and employees, but this distinction is not found to be operative in the executive department.

Of course it will be objected that the definitions found in the Codes cannot operate to construe the Constitution. This is true but it should be remembered that these Code definitions are attended by the presumption of constitutional validity and, moreover, they have been acquiesced in by all the departments of the state for many years.

When we consider the constitutional provision and seek to determine the intent of the framers, it is plain that what they had in mind was to forbid the legislative assembly, directly or indirectly, collectively or individually, from leaving its own sphere and attempting control of the other branches of the government. As an incident the framers doubtless had in mind prohibiting members of the assembly from manufacturing positions and offices to be occupied thereafter by themselves, and as another incident the framers doubtless had in mind prohibiting any unhealthy trading between members of the judicial and executive branches of the government and members of the assembly who had the power to pass large appropriations for executive or judicial departments and be repaid by employment during the intervals between sessions of the assembly. Appellant fully appreciates that courts are not to make a Constitution mean one thing at one time and another at some subsequent time. *Ita lex scripta est* (*Weill* v. *Kenfield*, 54 Cal. 111; *Chenoweth* v. *Chambers*, 33 Cal. App. 104, 164 Pac. 428), but the argument of respondents tends to abstract from the provisions of the Constitution invoked in this case any force or vigor in

the discharge of such a salutary policy by confining the language to a "drily logical extreme."

The duty to take an oath of office is a strong circumstance in distinguishing between an officer and an employee, and in a number of recent cases that circumstance is considered with others in determining the character of the position in question. (*Scully* v. *United States,* 193 Fed. 185, 186; *State Tax Com.* v. *Harrington,* 126 Md. 157, 94 Atl. 537; *Blynn* v. *Pontiac,* 185 Mich. 35, 151 N. W. 681; *Devlin* v. *New York,* 149 N. Y. Supp. 1061; *Theobald* v. *State,* 30 Ohio C. C. 414; *Reising* v. *Portland,* 57 Or. 295, Ann. Cas. 1912D, 895, 111 Pac. 377, 378.)

In view of the foregoing criterion and in view of the fact that even ministerial officers are required to take the oath of office in Montana, the auditor of the Railroad Commission must take an oath and having done so wears one of the badges of a civil office.

It is next asserted that the place of auditor is not a civil office, because no official bond is required of the incumbent. But the courts have already decided that the presence or absence of a bond is not an absolute criterion. The fact that a person occupying a position is or is not compelled to give a bond for the faithful performance of his duties does not seem to be an absolute criterion by which to distinguish between an office and an employment, but in several recent cases the presence or absence of a bond has been considered in connection with other circumstances. (*Rhoden* v. *Johnston,* 121 Ark. 317, 181 S. W. 128; *Bankers' Surety Co.* v. *Newport,* 162 Ky. 473, 172 S. W. 940; *State Tax Com.* v. *Harrington,* 126 Md. 157, 94 Atl. 537; *Reising* v. *Portland,* 57 Or. 295, Ann. Cas. 1912D, 895, 111 Pac. 377, 378.)

It has been determined, on the highest authority that the term "civil offices" is used in contradistinction to "military offices," and covers all offices whether their duties are executive, legislative or judicial, excluding only those in the army and navy. (*Twenty Per Cent Cases,* 13 Wall. 568; *State* v. *Clarke,* 21 Nev. 333, 31 Pac. 545.) This would seem to be the

proper interpretation of the phrase in our Constitution, and such interpretation will effectuate the wise policy of the framers to keep each department of the government in its own forum.

In support of the view that an incumbent becomes a civil officer or a public officer when appointed by one exercising sovereign powers such as the Railroad Commission, the attention of the court is invited to the following line of decisions from the supreme court of the United States: *United States* v. *Hartwell,* 6 Wall. 385, 18 L. Ed. 830 [see, also, Rose's U. S. Notes]; *United States* v. *Germaine,* 99 U. S. 508, 25 L. Ed. 482; *United States* v. *Mouat,* 124 U. S. 303, 31 L. Ed. 463, 8 Sup. Ct. Rep. 505.

The following places or positions have been held to be public or civil offices: A rural mail carrier (*Groves* v. *Borden,* 169 N. C. 8, Ann. Cas. 1917D, 316, L. R. A. 1917A, 228, 84 S. E. 1042); a letter-carrier (*United States* v. *McCrory,* 91 Fed. 295, 33 C. C. A. 515); a sheriff (*Sibley* v. *State,* 89 Conn. 682, 96 Atl. 161); assistant superintendent of schools (*People* v. *Toledo,* 267 Ill. 142, 107 N. E. 879); treasurer of a public institution whose trustees were appointed by the governor by and with the advice and consent of the senate (*Illinois Industrial Home for Blind* v. *Dreyer,* 150 Ill. App. 574); delinquent tax collector (*Bankers' Surety Co.* v. *City of Newport,* 162 Ky. 473, 172 S. W. 940); prison guard (*Page* v. *O'Sullivan,* 159 Ky. 703, 169 S. W. 542); policeman (*Blynn* v. *Pontiac,* 185 Mich. 35, 151 N. W. 681); warden of a county jail (*Sullivan* v. *McOsker,* 84 N. J. L. 380, 86 Atl. 497); inspector appointed by a local board of health (*Fredericks* v. *Board of Health,* 82 N. J. L. 200, 82 Atl. 528); assistant clerk of orphan's court (*Evans* v. *Luzerne County,* 54 Pa. Super. Ct. 44); superintendent of construction (*In re Public Officers,* 20 Pa. Dist. 15); tax commission (*Blue* v. *Tetrick,* 69 W. Va. 742, 72 S. E. 1033); clerk of recorder's court of New Orleans (*Moll* v. *Sbisa,* 51 La. Ann. 290, 25 South. 141); superintendent of county poorhouse (*Sanders* v. *Belue,* 78 S. C. 171, 58

S. E. 762); trustees of Agricultural College of Utah (*McCormick* v. *Thatcher,* 8 Utah, 294, 17 L. R. A. 243, 30 Pac. 1091); city building inspector (*State* v. *Mackie,* 82 Conn. 398, 74 Atl. 759); superintendent of Arkansas School for Blind (*Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667); judge of police court (*Montgomery* v. *State,* 107 Ala. 372, 18 South. 157); health inspectors of city (*Patton* v. *Board of Health,* 127 Cal. 388, 78 Am. St. Rep. 66, 59 Pac. 702); members of state board of legal examiners (*State* v. *Hocker,* 39 Fla. 477, 63 Am. St. Rep. 174, 22 South. 721); county treasurer (*Bradford* v. *Justices,* 33 Ga. 332); harbor-master of city (*Goud* v. *City of Portland,* 96 Me. 125, 51 Atl. 820); county levee commissioner (*Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169); member of board of water commissioners of city (*State* v. *Valle,* 41 Mo. 29); deputy inspectors of boilers and elevators (*Gracey* v. *City of St. Louis,* 213 Mo. 384, 111 S. W. 1159); chief grain inspector of state (*State* v. *Knott,* 207 Mo. 167, 105 S. W. 1040); city superintendent of streets (*State* v. *May,* 106 Mo. 488, 17 S. W. 660); notary public (*In re Opinion of Justices,* 73 N. H. 621, 6 Ann. Cas. 283, 5 L. R. A. (n. s.) 415, 62 Atl. 969); bridge-tender (*State* v. *Board of Public Works,* 51 N. J. L. 240, 17 Atl. 112); member of county board of education (*State ex rel. Barnhill* v. *Thompson,* 122 N. C. 493, 29 S. E. 720), and chief of police of city (*Russell* v. *Williamsport,* 9 Pa. Co. Ct. 131).

Again it is contended that the duties of auditor of the Railroad Commission are not prescribed by law, but the question whether the duties of a position are prescribed by law or otherwise is not an absolute criterion. (*Martin* v. *United States,* 168 Fed. 198, 93 C. C. A. 484; *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667; *Patton* v. *Board of Health,* 127 Cal. 388, 78 Am. St. Rep. 66, 59 Pac. 702; see, also, *Cooper's Appeal,* 14 Hawaii, 282; *People* v. *Langdon,* 40 Mich. 673; *Magner* v. *St. Louis,* 179 Mo. 495, 78 S. W. 782.)

Again it is said that since the compensation of the auditor is not fixed by law the position is not that of a civil or public

office, but it has been held that the fact that a person's salary is not fixed by law is immaterial. (*Martin* v. *United States,* 168 Fed. 198, 93 C. C. A. 484; *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667; *State* v. *Hocker,* 39 Fla. 477, 63 Am. St. Rep. 174, 22 South. 721; *Cooper's Appeal,* 14 Hawaii, 282; *Bunn* v. *People,* 45 Ill. 397 (wherein it was conceded by counsel that fees or emoluments were not attributes of an ·office) ; *Goud* v. *Portland,* 96 Me. 125, 51 Atl. 820; *State* v. *Valle,* 41 Mo. 29; *State* v. *Knott,* 207 Mo. 167, 105 S. W. 1040; *Gracey* v. *St. Louis,* 213 Mo. 384, 111 S. W. 1159; *Olmstead* v. *New York,* 42 N. Y. Super. Ct. 481; *Shaw* v. *Jones,* 6 Ohio Dec. 462.) The mere fact that a person is paid for his services is of no value in determining the question whether he is an official or employee, as both officers and employees are paid for their services. (*Hartigan* v. *Board of Regents,* 49 W. Va. 14, 38 S. E. 698.)

The court will soon discover on reading the authorities, and they are most numerous, being gathered in 63 American State Reports, 181, 17 Am. & Eng. Annotated Cases, 449, and Annotated Cases 1917D, 316, that very few of the authorities deal with the interpretation of any constitutional provision. They turn on minor questions, and have no bearing in the determination of a particular constitutional prohibition like that involved in this case.

*Mr. L. A. Foot,* Attorney General, *Mr. A. H. Angstman,* Assistant Attorney General, and *Mr. E. G. Toomey,* for Respondents, submitted a brief; *Mr. Angstman* and *Mr. Toomey* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action to enjoin the allowance of a salary claim for services rendered the state.

Grant Reed is and, at the time of the commencement of this action, was a representative in the Montana legislature. His term of office as representative will expire, at noon, the first

Monday in January, 1929. By appointment of the Board of
Railroad Commissioners of Montana, made while he was a
representative in the legislature, Reed is and, at the time of
the commencement of this action, was holding a position desig-
nated as auditor for the Board of Railroad Commissioners
and its ex-officio commissions, at a salary, fixed by the board,
of $225 per month, which he is and has been and, at the time
of the commencement of this action, was drawing from the
state of Montana, for his services as such auditor; except that
he did not fill such position of auditor or draw the salary thereof
while sitting and serving as a representative during the recent
session of the legislature but resumed his position of auditor
at the end thereof.

The complaint alleges the facts in relation to the foregoing
statement. It further alleges that relator is a resident, citi-
zen and taxpayer of Lewis and Clark county and brings the
action in behalf of himself and other taxpayers; that the ap-
pointment of Reed as auditor was void under section 7 of
Article V of the Constitution of Montana and, also, under
Artcle IV of the Constitution; that ever since Reed's appoint-
ment as auditor, except during the recent session of the legis-
lature, defendants, as and constituting the State Board of
Examiners, have allowed his salary of $225 per month as audi-
tor and they threaten to continue so to do and will continue
so to do, unless therefrom enjoined by the court. The com-
plaint prays that, during the remainder of Reed's legislative
term, defendants be enjoined from approving, for payment to
him, as such auditor, any claim of compensation.

To the complaint defendants interposed a general demurrer.
The demurrer was sustained and plaintiff declined to amend
or plead further. Whereupon, judgment was rendered against
plaintiff. Plaintiff appealed and assigns as error the rulings
of the trial court in sustaining the demurrer, rendering judg-
ment against plaintiff and dismissing the action. The issue
on appeal is: Was Reed's appointment as auditor violative of
the state Constitution?

Section 7 of Article V of the Constitution is as follows:
"No senator or representative shall, during the term for which
he shall have been elected, be appointed to any civil office under
the state; and no member of Congress, or other person hold-
ing an office (except notary public or in the militia) under the
United States or this state, shall be a member of either house
during his continuance in office."

Article IV of the Constitution is as follows: "The powers
of the government of this state are divided into three distinct
departments: The legislative, executive and judicial, and no
person or collection of persons charged with the exercise of
powers properly belonging to one of these departments shall
exercise any powers properly belonging to either of the others,
except as in this constitution expressly directed or permitted."

The only question for us to decide is—is the position of
[1] auditor, held by Grant Reed, a civil office (?); for, if
it be a civil office, he is holding it unlawfully; and, if it be
not a civil office, he is not an officer but only an employee,
subject to the direction of others, and has no power in con-
nection with his position and is not exercising any powers
belonging to the executive or judicial department of the state
government. In the latter event, Article IV of the Constitu-
tion is not involved. What, then, is a civil office?

In one form or another, the Constitutions of all of the states,
we believe, contain substantially the same inhibition as that
involved in this case. In many of them the words "civil
office" are used. There are a number of judicial decisions
defining "civil office."

"A civil office has the characteristics of tenure; of definite
term; of general duties as a part of the regular administration
of the government; of right to emoluments; and of qualification
by oath." (*State ex rel. Cummings* v. *Crawford,* 17 R. I. 292,
21 Atl. 546.)

"The words 'civil office under the state' * * * import
an office in which is reposed some portion of the sovereign

power of the state." (*Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169.)

"A civil office is a grant and possession of the sovereign power; and the exercise of such power, within the limits prescribed by the law which creates the office, constitutes the discharge of the duties of the office; and it is distinguished in this respect from a mere employment." (*State ex rel. Attorney General* v. *Valle,* 41 Mo. 29.)

In *United States* v. *Hatch,* 1 Pinn. (Wis.) 182, the term "civil officers" is said to embrace only those in whom a portion of the sovereignty is vested or to whom the enforcement of municipal regulations for the control of the general interest of society is confided.

In South Carolina, it has been held that the words "civil officers" simply mean and are synonymous with public officers who hold offices of a civil nature. (*The State* v. *O'Driscoll,* 3 Brev. (S. C.) 526.)

In Nevada, it has been held substantially to the same effect, i. e., that civil offices mean all public offices not of a military character. (*State ex rel. Summerfield* v. *Clarke,* 21 Nev. 333, 37 Am. St. Rep. 517, 18 L. R. A. 313, 31 Pac. 545.)

We hold, likewise, that the words "civil office" in our Constitution mean any public office not of a military character. It is the obvious meaning. What, then, is a public office?

In some states the decisions simply assume that civil offices are public offices of a civil nature and proceed to decide what is a public office. In other states the Constitutions use the [2, 3] words "public office." Hence, judicial definitions of office or public office are much more numerous than are decisions confined to defining civil office.

There are a great many judicial decisions defining the word "office" or the words "public office." The subject is an old one and decisions extend far back. Some of the decisions stress one test; others, some other. However, in nearly all are found certain common features that stand out prominently. To quote from all examined would extend this opinion much beyond rea-

sonable length. However, we shall quote here from some decisions and definitions which illustrate, to some extent, the various essentials of public office, emphasized by the courts and other authorities, and which state some of the things that have been held requisite.

"An 'office' is defined by good authority as involving a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public, by which it is distinguished from employment." (*State ex rel. Barnhill* v. *Thompson,* 122 N. C. 493, 29 S. E. 720.)

"It embraces the ideas of tenure, duration, emoluments and duties and these ideas or elements cannot be separated and each considered abstractly. All, taken together, constitute the office." (*Kendall* v. *Raybould,* 13 Utah, 226, 44 Pac. 1034.)

"There must be some fixed term prescribed for his continuance in office; he must give a bond and take an oath faithfully to discharge the duties of his office; a commission must issue, investing him with authority to enter upon the office." (*Lindsey* v. *Attorney General,* 33 Miss. 508.)

"Where the legislature creates the position, prescribes the duties and fixes the compensation and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office." (*Patton* v. *Board of Health,* 127 Cal. 388, 78 Am. St. Rep. 66, 59 Pac. 702.)

"Where the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer." (*Richie* v. *Philadelphia,* 225 Pa. 511, 26 L. R. A. (n. s.) 289, 74 Atl. 430.)

"His duties must not be merely clerical or those only of an agent or servant but must be performed in the execution or administration of the law, in the exercise of power and

authority bestowed by law.'' (*Attorney General* v. *Tillinghast*, 203 Mass. 539, 17 Ann. Cas. 449, 89 N. E. 1058, 1060.)

''An individual who has been appointed or elected in a manner prescribed by law and exercises functions concerning the public, assigned to him by law, must be regarded as a public officer.'' (*Bradford* v. *Justices of Inferior Court*, 33 Ga. 332.)

''The most general distinction of a public office is that it embraces the performance, by the incumbent, of a public function, delegated to him as a part of the sovereignty of the state.'' (*State* v. *Jennings*, 57 Ohio, 415, 63 Am. St. Rep. 723, 49 N. E. 404.)

''Every office under the Constitution implies an authority to exercise some portion of the sovereign power of the state, either in making, executing or administering the laws.'' (*Olmstead* v. *Mayor*, 42 N. Y. Super. Ct. 481.)

''The idea of an officer clearly embraces the idea of tenure, duration, fees or emoluments, rights and powers, as well as that of duty.'' (Burrill's Law Dictionary.)

''The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involve a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.'' (Mechem on Public Offices, par. 4.)

''An office * * * may be defined as a public position, to which a portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, and which is exercised for the benefit of the public.'' (High on Extra. Rem., par. 625.)

Many more definitions to like effect might be quoted. From the foregoing and many other authorities examined, it ap-

pears that various elements are considered requisite to a public office. Some decisions hold that the taking of an official oath is necessary to constitute a position an office; others hold that the giving of an official bond is necessary; still others hold that the issuance of a commission or certificate of appointment is necessary; some decisions hold all three requisite. The Constitution (Art. XIX, sec. 1) and statutes (sec. 430, Rev. Codes, 1921) of Montana provide that all officers must take and subscribe an oath or affirmation and, the statutes say, file it. (Sec. 431, Rev. Codes, 1921.) The statutes provide for the issuance to all officers of commissions or written evidence of appointment. (Secs. 426–429, Rev. Codes, 1921.) The record does not disclose that either of these things was done in the case of Grant Reed, in connection with his appointment as auditor. We may not presume they were done. In order to do that, we would first have to presume he is an officer and we may not presume he is an officer,—it must be shown, therefore, we may not presume anything was done by him or for him as an officer. It must appear in the record. (*Trainor* v. *Board of County Auditors,* 89 Mich. 162, 15 L. R. A. 95, 50 N. W. 809; *State* v. *Cole,* 38 Nev. 215, 148 Pac. 551; *Commonwealth ex rel. Bache* v. *Binns,* 17 Serg. & R. —— Pa. —— 219; *State ex rel. Walker* v. *Bus,* 135 Mo. 325, 33 L. R. A. 616, 36 S. W. 636; *Mayor* v. *Lyman,* 92 Md. 591, 84 Am. St. Rep. 524, 52 L. R. A. 406, 48 Atl. 145.)

Some decisions hold that, in an office, there must be tenure, duration, a definite term of service; others, that the character of the service does much to determine if a position is an office. Not all employment constitutes an office and, the employee an officer. (*Farley* v. *Board of Education,* 62 Okl. 181, 162 Pac. 797; *United States* v. *Maurice,* 2 Brock. 102, Fed. Cas. No. 15,747.)

Practically all of the authorities, however, hold that to an officer are granted some of the sovereign powers of the government, to be exercised for the benefit of the public. They hold, also, quite generally that an officer's duties must be prescribed

by law and that he must be independent in the exercise of them and not subject to orders from a superior as to the nature or discharge of his duties, with the exception of some assistants, such as assistant attorneys general, secretaries, and the like, created by law, with salaries fixed by law. Some authorities hold deputies to be officers; others, not. Those two rules, stated above, delegation of sovereign power and independent exercise of it, with the stated exception in the latter, appear to be general.

In accordance therewith, in *Robertson* v. *Ellis County,* 38 Tex. Civ. App. 146, 84 S. W. 1097, it is stated that a statute creating the position of court stenographer called the incumbent an officer of the court but it is held that the incumbent was not an officer because no sovereign functions of government devolved upon him; in other words, his duties were merely routine and subject to the direction of the judge of the court. On the other hand a prison guard whose duties were described by statute, so that he was independent in the discharge thereof, has been held to be a public officer. (*Page* v. *O'Sullivan,* 159 Ky. 703, 169 S. W. 542.)

"The powers of all officers are defined and conferred by law." (*Georgia Penitentiary Co. No. 2* v. *Gordon,* 85 Ga. 159, 11 S. E. 584.)

"It also appears from an examination of the charter that all the executive power relating to educational matters is vested in a department known as the 'Department of Education' and this department is composed of the Board of School Commissioners. The superintendent of public instruction exercises no power except what is derived from and through this board." (*Mayor* v. *Lyman,* supra.) He was held, therefore, not to be an officer.

"The act in question makes it incumbent upon the legislature to fix compensation of all officers and, as this term, 'officers,' is used in the Constitution, we are satisfied that deputies, assistants, bookkeepers, clerks and other employees are not officers. * * * The officer in question is the individual who

takes the oath of office and is responsible for his official acts, as well as those of his various employees." (*Theobald* v. *State ex rel. Hall,* 20 Ohio Cir. Dec. 414.)

"The term 'office' implies a delegation of a portion of the sovereign power and the possession of it by the person filling the office. This definition carries with it *ex vi termini* the further idea that the power delegated must be exercised by the person in his own and not in another's right." (*State ex rel. Brown* v. *Christman,* 126 Miss. 358, 88 South. 881.)

"The duties of an officer are fixed by law and an employment arising out of a contract, whereby the person employed acts under the direction or control of others and which employment depends for its duration and extent upon the terms of such contract, is not an office. * * * While an officer may be appointed by constituted authority, yet, in the discharge of his duties, he knows no guide but the established law and cannot be lawfully directed by others in the conduct of his office." (*Farley* v. *Board of Education,* supra.)

*Darley* v. *Reg.,* 12 Clark & F. (Eng.) 520, is an English case of long standing, much quoted and relied upon in this country, which holds to the same effect.

A leading case in point is that of *People ex rel. Throop* v. *Langdon,* 40 Mich. 673, in which that eminent jurist, Judge Cooley, speaking for the court, said: "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath and, perhaps, to give an official bond; in the liability to be called to account as a public offender and for misfeasance or nonfeasance in office and, usually, though not necessarily, in the tenure of his position. In this case, the facts are stipulated. We find among them no evidence that an office known as chief clerk in the office of the assessor has been created. A person has been appointed and has acted under the designation of chief clerk but no statute or ordinance has given him that title and, if he were now to be called and to style himself, in the discharge of his duties, head clerk or

leading clerk or assistant to the assessor or assessor's amanuensis, it would, for aught we can discover, be equally well, for nothing whatever depends upon the name. * * * Nor do we find in the facts stipulated or in any law or ordinance the requirement of an official oath. It is said that the usual oath of office has, sometimes and perhaps always, been administered but why administered we do not understand. The fact of it being taken cannot prove that the clerk is an officer. * * * It was, we think, a needless ceremony. Nor do the duties usually performed by the chief clerk indicate an office, rather than an employment. Nothing but custom has defined them. * * * He is wholly subordinate to the assessor, having no independent functions. * * * The duties, such as they are, can be changed at the will of the superior, since no rule of law or well defined custom forbids it.'' The chief clerk was held to be only an employee, not an officer.

An early case in this country is that of *In re Opinion of Judges,* 3 Greenl. (Me.) 481. The legislature empowered the governor to appoint an agent for the preservation of timber on the public lands and he did so. Of the agent the court said: ''He is to be clothed with no powers but those of superintending the public lands and performing certain acts in relation to them, under the discretionary regulations of the governor.'' He was held to be merely an employee of the state, not an officer.

A case much in point is *State* v. *Spaulding,* 102 Iowa, 639, 72 N. W. 288. The Commissioners of Pharmacy of the state of Iowa, constituting a commission created by law and having the custody of considerable funds, chose a treasurer of the commission, a position undefined and unregulated by law, as in the case at bar. His only duties were those placed upon him by the commission and he held the position at the will of the commission, as in the case at bar. The court said: ''A position, the duties of which can be changed at the will of the superior, * * * is not an office but a mere employment and the incumbent

is not an officer but a mere employee." The treasurer was held
to be only an employee, not an officer.

An outstanding case, much in point, is *Olmstead* v. *Mayor,*
supra (New York). The department of public parks was a
department of the state government of New York. It was
conducted by officials known as Commissioners of Public Parks.
The department appointed Olmstead to a position, known
as landscape architect, in the department, at a salary of $6,000
per year, and he served therein a number of years. Of him
the court said: "The plaintiff * * * had no term or tenure
of office, discharged no duties and exercised no powers de-
pending directly upon the authority of law. He was simply
the servant of the commissioners of the park and responsible
only to them. His responsibility was limited to them. * * *
The distinction is plainly taken between a person acting as
a servant or employee, who does not discharge independent
duties but acts by direction of others, and an officer empowered
to act in the discharge of a duty or trust, under obligations
imposed by the sanctions and restraints of legal authority in
official life." Olmstead was held to be only an employee, not
a public officer. That case cites many cases in support of the
position taken and it has been followed by a number of New
York cases, citing it and holding to the same effect.

A completely analogous case, in which the subject is ex-
haustively treated and a vast number of cases are cited in
support of the court's decision, is that of *State* v. *Cole,* 38
Nev. 215, 148 Pac. 551. The Nevada legislature enacted an
Act providing for exhibits at the San Diego and San Francisco
expositions. It provided for the appointment of an exposition
commissioner. It created a Board of Exposition Directors and
empowered the board to employ superintendents, directors
clerks and other persons, upon such terms as might be deemed
just and equitable. Money was appropriated for such pur-
pose. The board employed Cole as a superintendent (note,
particularly, one of such as the Board was empowered to em-
ploy and designated by name in the Act) and fixed his salary

at $300 per month. At the time, Cole was a state senator. The Nevada Constitution has the same inhibition against appointment of legislators to office as has ours, except that in the Nevada Constitution the words used are "any civil office of profit," merely adding to our inhibition the words "of profit." The court held Cole was not filling an office. It said: "None of the sovereign power of the state is entrusted to him. His compensation, period of employment and the details of his duties are all matters of contract with the Board of Directors." It would be hard, we think, to find two cases more analogous on principle than that case and the case at bar.

Other cases to the same effect and to quote from which we cannot afford the space are: *State ex rel. Attorney General* v. *Brennan,* 49 Ohio, 33, 29 N. E. 593; *Hall* v. *Wisconsin,* 103 U. S. 5, 26 L. Ed. 302; *McArthur* v. *Nelson,* 81 Ky. 67; *Rhodes* v. *Johnston,* 121 Ark. 317, 181 S. W. 128; *State* v. *Brethauer,* 83 Conn. 143, 75 Atl. 705; *Fergus* v. *Russell,* 270 Ill. 304, Ann. Cas. 1916B, 1120, 110 N. E. 130; *Eliason* v. *Coleman,* 86 N. C. 241; *Jones* v. *Botkin,* 92 Kan. 242, 139 Pac. 1196; *McAvoy* v. *Trenton,* 82 N. J. L. 101, 80 Atl. 950; *State* v. *Hocker,* 39 Fla. 477, 63 Am. St. Rep. 174, 22 South. 721; *Commonwealth* v. *Bush,* 131 Ky. 384, 115 S. W. 249; *Worcester* v. *Goldsborough,* 90 Md. 193, 44 Atl. 1055. Many other supporting cases are available. This list could be greatly extended but it is not necessary to cite more.

Applying to the case at bar the doctrines of the foregoing cases quoted from, what do we find? Do we find Reed's position a delegation of the power of sovereignty and his services the exercise thereof? Are his duties prescribed by law? Are they fixed and definite? In the discharge thereof, is he independent of any superior will or power, save that of the law? Has he any of the attributes of an officer? Does he fill an office? If so, who created the office? We must turn to the record for enlightenment.

We are not informed if he took an oath of office and, sharing the views of Judge Cooley, above quoted, we hold it is not decisive if he did. Taking an official oath cannot make a position an office; although an office cannot be held legally in this state without the taking of the oath; but we look for other tests.

There is but one section of the Montana Codes authorizing the Board of Railroad Commissioners to employ anyone. It is section 3783, Revised Codes, 1921, and is as follows: "The board shall, immediately after its members have qualified, organize by electing one of its members as chairman and shall appoint a secretary, who shall possess the same qualifications as members of said board, to serve during the pleasure of the board. Said board shall also have the power to appoint stenographers, inspectors, experts and other persons whenever deemed expedient or necessary by said board to the proper performance of its duties."

After the Board of Railroad Commissioners had been in existence for some time, it was made, by law, ex officio the Public Service Commission of Montana. There is but one section of the Montana Codes authorizing that body to employ anyone. It is section 3896, Revised Codes, 1921, and is as follows: "The commission is authorized to employ an engineer at a salary of four thousand dollars per annum, also examiners, experts, clerks, accountants or other assistants as it may deem necessary, at such rates of compensation as it may determine upon; and it is further provided that the secretary of the public service commission shall receive an annual salary of six hundred dollars, such salary to be in addition to the salary now provided by law to be paid to the secretary of the board of railroad commissioners of the state of Montana."

The Board of Railroad Commissioners has also been made, by law, ex officio the Montana Trade Commission. There is but one section of the Montana Codes authorizing the last named body to employ anyone. It is section 3983, Revised Codes, 1921, and is as follows: "The commission is authorized

to employ an accountant, at a salary of not to exceed three thousand dollars per annum, also examiners, experts, clerks and accountants or other assistants, as it may deem necessary, at such rates of compensation as may be determined upon.''

There is no provision in any of the foregoing sections for employment of an auditor but we do not consider that particularly material. It is what Reed does, not what he is called, that counts. ''The character of an office cannot be attached to a position by a name merely; whether it be an office or not will depend upon the nature and character of the duties attached to it by law.'' (*State* v. *Jennings,* supra.) The record sheds no light on the nature of Reed's duties. There is no showing that they are fixed by law or that they are made definite and regular even by the Board of Railroad Commissioners or one of the ex-officio commissions. We are left to surmise. An auditor not being specifically mentioned in any of the foregoing sections, we assume Reed was employed under the provision, found in those sections, for ''other assistants,'' or ''other persons.'' He is called an auditor. We may surmise, and can only surmise, he does the work of an auditor; but, if so, it is merely clerical work and we cannot see that it involves any administrative, executive or judicial power, such as must come from delegation of power of sovereignty. (*Attorney General* v. *Tillinghast,* supra.)

However, be his duties what they may, they are subject absolutely to the control of the board; so there is no certainty, nothing fixed or definite, about them. The complaint says he discharges them ''under the directions and orders of said board.'' The board can change them as it may see fit. The board can tell him, any time, his sole duty is to do the work of a janitor or a messenger. If he should not be pleased, in such event, his only recourse would be to quit. The board can put him to bookkeeping; if a stenographer, at stenographic work. The board can do with him as it will. As an employee, he is the creature of the board; it can discharge him or abolish his position, any day, without cause or previous

notice. The complaint says he receives a salary "at the pleas-ure of the board." The complaint says the board "fixed the salary"; then, of course, the board can reduce it or stop it. Do those conditions show in Reed the possession of a part of the sovereign power of the state? We cannot see it.

If Reed holds an office, who created the office? "An office does not spring into existence, spontaneously. It is brought into existence either under the terms of the Constitution, by legislative enactment or by some municipal body, pursuant to authority delegated to it." (*State* v. *Cole,* supra.) In the complaint, no authority for creation of an office is shown nor is it shown that one was created. An office must be created before it can be filled. (*White* v. *City of Alameda,* 124 Cal. 95, 56 Pac. 795.) Neither the Constitution nor the legislature of Montana has created any such office as auditor of the Board of Railroad Commissioners or of any of its ex-officio commis-sions. The board of railroad commissioners manifestly created the position held by Reed. It can create positions but it cannot create an office. Reed was employed by the board but that falls far short of creation of an office. "When a position is created, not by force of law but by contract of employment, the employment does not rise to the dignity of an office." (*Martin* v. *United States,* 168 Fed. 198, 93 C. C. A. 484.) We see in Reed's position nothing but employment; the record shows nothing more.

Counsel for plaintiff urges we should extend the language of the Constitution so as to include in the inhibition employ-ment of members of the legislature, as well as appointment to civil office; but we may not extend the language of the Constitution. That is beyond our legitimate power. (*State* v. *Cole,* supra.) Formerly, the Constitution of California, in a similar inhibition, used the words "any civil office of profit." Not satisfied with that, the people of California, apparently to render impossible such a condition as that presented in the case at bar, amended their Constitution so as to change those words to "any office, trust or employment." (*Chenoweth* v.

*Chambers,* 33 Cal. App. 104, 164 Pac. 428.)   The change may be wholesome.   The people of Montana can do likewise, and may when they shall so wish, but we may not do it for them.

There are a few isolated cases which, at first glance and until analyzed, appear to lend some color to plaintiff's contention, but the only case we have found which is well in point and favorable to plaintiff is that of *Vaughn* v. *English,* 8 Cal. 40.   In that case the California court, in an opinion of less than one page, citing as authority only one definition of a very general nature, held a clerk in the office of the secretary of state to be an officer.   However, the opinion was based on an Act of the legislature to fix the salaries of state officers, in which the clerk in the office of the secretary of state was specifically named and his salary fixed; thus including him in the term "officers."   Of course, the court could do nothing else than hold that the statute applied to him.   It then indulged in some *obiter* when it said: "The term 'officer,' in its common acceptation, is sufficiently comprehensive to include all persons in any public station or employment conferred by government"; a very broad statement, which would include every clerk and janitor and every employee of any nature.   However, that *obiter* has been modified repeatedly in *McDaniel* v. *Yuba County,* 14 Cal. 144; *White* v. *City of Alameda,* 124 Cal. 95, 56 Pac. 795; *Patton* v. *Board of Health,* 127 Cal. 388, 78 Am. St. Rep. 66, 59 Pac. 702; and in *Spreckels* v. *Graham,* 194 Cal. 516, 228 Pac. 1040, it is expressly repudiated.   Hence, *Vaughn* v. *English,* supra, is not authority.

In *Lacey* v. *State,* 13 Ala. App. 212, 68 South. 706, a certain clerk in a department of the state government was held to be an officer but the position held by him had been created, specifically and by name, by an Act of the legislature, which defined the duties of the incumbent and fixed his salary.   The court said: "The incumbent derives his authority directly from the state, by legislative enactment, and the duties imposed by the enactment are of a public character and the terms and compensation are definitely fixed."   It will be found

generally that clerks and others employed in subordinate positions, if held to be officers, fill positions created by the legislature and the duties and emoluments of which are fixed by legislative enactment. It is not so in the case at bar.

The term "officer" or the term "office" does not appear to have been defined heretofore by this court nor is there, in this state, any statutory general definition of either. Apparently there are only two Montana cases bearing upon the question of whether or not certain public servants are officers. In *State ex rel. Driffill* v. *City of Anaconda,* 41 Mont. 577, 111 Pac. 345, it is held that, under a statute, "firemen are servants or employees of the city but are not officers." In *State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940, it is held that a policeman is a "public officer," in the sense that, by provision of municipal ordinances, as well as of statute, he has to perform certain prescribed, definite duties to the public, but that he is not a state officer nor a municipal officer. Other than those cases, we find nothing, bearing on the subject, in the decisions of this court.

With the policy of making such appointments as that here involved we have nothing to do. That belongs to another department of the state government. We are only to decide the law and we must declare it as we find it. After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the

legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other written authority and give an official bond, if the latter be required by proper authority.

In conclusion, we hold that Grant Reed does not hold a civil office under the state; that the position he holds does not possess a delegation of a portion of the sovereign power of government. In our opinion, he is only an employee; holding a position of employment, terminable at the pleasure of the employing power, the Board of Railroad Commissioners. We hold his appointment not violative of section 7 of Article V of the Constitution. That being the case, he has, in himself, by virtue of his appointment, no powers properly belonging to the judicial or executive department of the state government, for he is wholly subject to the power of the board, and, having no powers, he can exercise none; and, therefore, his appointment was not violative of Article IV of the Constitution.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.