## Talbott, Auditor of Public Accounts, v. Jones et al.

(Decided March 19, 1935.)

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellant.

ELLERBE CARTER and LESLIE W. MORRIS for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is a suit by twenty-five highway patrolmen, in which they ask for a declaration of their rights and for a writ of mandamus against the defendant Auditor requiring him to draw his warrant on the Treasurer for the amount alleged to be due to the plaintiffs for pay as employees of the state. A demurrer was filed to the petition as amended, and upon the overruling of the demurrer by the trial court the defendant declined to plead further, and judgment was entered in accordance with the prayer of the petition.

It is alleged that the plaintiffs were duly appointed and employed, for the purpose of enforcing all the motor vehicle laws of the commonwealth, by executive orders promulgated by the Governor, dated August 30, 1934, and December 19, 1934, under authority of chapter

18 of the Acts of the Special Session of the General Assembly of 1934. Following their appointment, plaintiffs say they were paid their salaries and expenses for the month of October, 1934, but since then the Auditor of Public Accounts has declined to draw his warrant for their salaries for the months of November and December. The Auditor assigns as his basis for refusal to draw the warrant that chapter 18 of the Acts of the Special Session of 1934 is unconstitutional because it is not within the scope of the Governor's call for the Special Session, and because it is an unconstitutional delegation of legislative power.

Following the assertion of these claims by the Auditor, the State Highway Commission, under date of November 27, 1934, commissioned each of the plaintiffs as a member of the highway patrol, upon the authority of chapter 106, sec. 18, of the Acts of the General Assembly of 1932 (Kentucky Statutes, 1933 Supplement, sec. 2739g-97).

It is alleged in the petition that on October 11, 1934, plaintiffs enlisted and were sworn in as members of the Franklin county unit of "Active Militia," created pursuant to chapter 51 of the Acts of the Regular Session of 1934, and were thereupon ordered on active duty by the sheriff of Franklin county.

Likewise, it is alleged that plaintiffs enlisted in the Kentucky National Guard on November 27, 1934, and were ordered into active field service as members of the National Guard by an executive order dated November 27, 1934.

We are concerned with these various statutes and appointments only so far as they relate to the right of the plaintiffs to their pay. We shall consider only the points deemed necessary to answer that question.

Chapter 18 of the Acts of the Special Session of 1934, known as the "Uniform Operator's License Act," in section 2, provides for the payment of a fee of fifty cents in securing the license. Twenty-five cents of this payment are used to defray the expense of collection, while the remaining twenty-five cents are forwarded to the state treasury "and credited to a revolving fund maintained for the purposes of paying salaries and expenses for the enforcement of the motor vehicle laws of the Commonwealth, said fund to be expended in the

manner determined by the Governor of the Commonwealth, and warrants to be issued by the Auditor of Public Accounts against said funds for the aforesaid purposes upon the order of the Governor of the Commonwealth.''

It is claimed that the Uniform Operator's License Act is a police regulation and that its revenue-raising feature is merely incidental and secondary; that it must be sustained, if at all, as a revenue measure. This necessitates an examination of the applicable provisions of the Governor's proclamation under which the Special Session was convened. So far as material here, the proclamation reads:

"1. To enact such measures as will provide sufficient *revenue* to carry on *all proper functions* of the State Government, including common schools and higher institutions of learning, and to provide necessary funds for relief of the unemployed and distressed of the State; and to repeal any laws in conflict with such measures.

"2. To *appropriate* necessary sums to the various State departments, commissions and agencies to carry on their respective duties and functions.'' Acts 1934, Sp. Sess., p. viii.

Aside from the presumption of validity attached to a legislative enactment, it should be observed that the Governor, who issued this call, approved and signed the bill in question. The act, by its own terms, is expressly made severable by the Legislature. See section 33. Whether it is primarily or secondarily a revenue measure or an appropriation, we believe that section 2 of the act is fairly within the intendment of the call. This is as far as we need go, or ought to go, on this question in this case.

The Governor was given power to expend the fund raised by the act "for the purposes of paying salaries and expenses for the enforcement of the motor vehicle laws.'' We think it is clear that this grant was not intended as a delegation of legislative power. It was not intended thereby that the Governor should or would *create* any new office. When we read the provision in the light of the call for the Special Session—to raise revenue to *carry on* all proper functions of government and to appropriate sums to the various departments,

etc., to *carry on* their duties—it is apparent that the intention of the Legislature was to devote the fund to making existing agencies more effective. We do not think that the Legislature abdicated any of its functions by the act.

Under color of the power delegated, the Governor undertook to establish "the Department of Public Safety" as a part of the military department of the commonwealth. Plaintiffs were employed by and at the will of the Governor, as a part of this so-called department of public safety, to aid in the enforcement of the motor vehicle laws, and, as alleged in the petition, have rendered effective service in that connection.

While the executive order of the Governor refers to the plaintiffs as "Highway Patrolmen" and "Members of the Active Militia," it appears from the allegations of their petition that they have performed the work of investigators, whom the Governor clearly had the right to select and appoint, under our construction of section 2 of the act. As investigators, they are entitled to their salaries and expenses, even though not clothed by the Governor's order with the authority of patrolmen or as members of the active militia.

It is immaterial, we think, what name or designation may have been given to plaintiffs or that an elaborate quasi police organization may have been proposed. Under the view that we have taken of the case, it is not necessary to determine the validity of those matters. We prefer to place our conclusion upon the ground that the Governor had the power and, under the implied mandate of the statute, the duty to devote the fund raised to the payment of salaries and expenses in the enforcement of the motor vehicle laws. Under that power, he had the right, in his discretion, to call such "agents" or "inspectors" or "field men" to his assistance as was reasonably proper vicariously to effectuate the purposes of the act in seeing that the motor vehicle laws were enforced. Plaintiffs were not officers holding under a fixed or permanent tenure. They have none of the sovereign powers of government, under their employment by the Governor, other than as inspectors or informers for other agencies. Their function was exercised merely at the will of the Governor, in aid of the execution of his duties. State v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A. L. R. 583, and note; Shanks,

Auditor, v. Howes, 214 Ky. 613, 283 S. W. 966. That it was deemed advisable to qualify these appointees as peace officers detracts not at all from the salient point and adds nothing to the controversy here. If plaintiffs are "officers," it is by virtue of statutes other than this one. The objection urged on the ground of the claimed unconstitutional delegation of legislative power, therefore, is not well taken.

The allegations of the petition as amended show the appointment of plaintiffs, their services thereunder, and the order of the Governor directing the Auditor of Public Accounts to draw his warrant for the pay in question.

It follows that the decision of the trial court was correct.

Judgment affirmed.