

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

State Board of Education
Austin, Texas

Dear Sirs:

Opinion No. O-4313
Re: Whether a member of the State
Board of Education may serve as
a member of an Alien Enemy Hear-
ing Board under the described
facts.

Permit us to quote your letter of recent date requesting a legal opinion from this department. It reads:

"One of the members of the State Board of Educa-
tion has been asked to serve as a member of an Alien
Enemy Hearing Board.

"I am advised that the Federal Government pays a
nominal compensation of a dollar per year for service
on the Alien Enemy Hearing Boards, and that members of
such boards are required to take oath but are not re-
quired to give bond. These Boards are utilized by the
Attorney General of the United States in the matter of
determining whether to release, parole or intern alien
enemies in this country apprehended by the Department
of Justice. The Boards do not have independent powers,
but simply make recommendations to the Attorney General.
He is the officer who makes the decision in the matter,
and he is not bound to observe or give weight to the
recommendations of these hearing boards. In other words,
they occupy a purely advisory capacity.

"Will you please advise whether in your opinion
it is permissible for a member of the State Board of
Education at the same time to serve as a member of an
Alien Enemy Hearing Board under Section 12 of Article
16 of the Constitution of this state. Your early ad-
vice will be deeply appreciated."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Our investigation discloses the following additional facts regarding the origin, status and character of an Alien Enemy Hearing Board.

Pursuant to Section 21 of Title 50 of the United States Code, the President of the United States by proclamation charged the United States Attorney General with the duty of executing all regulations contained in the proclamation concerning alien enemies within continental United States and its possessions. In the execution of his responsibility in this regard, the Attorney General has set up in each judicial district a hearing board for alien enemy cases. There is no express constitutional or statutory provision for the board. Its purpose and function is to hear and make recommendations to the Attorney General with respect to the disposition of the cases of alien enemies brought before it. Written reports and recommendations are made to the Attorney General by the board. Final decision in each case is made by the Attorney General and this decision is enforced by the United States Attorney. The board is merely a fact finding and advisory administrative instrumentality; it neither makes nor enforces decisions.

The oath of office taken by members upon the Board is prescribed and required by the Attorney General. The appointment is temporary and not for any time certain. It inheres in, and exists only because of, the war emergency. The board meets only occasionally and its activities are sporadic.

You ask whether a member of the State Board of Education may serve as a member of this board in view of the prohibition contained in Section 12 of Article 16 of the Constitution of Texas. Section 12 reads as follows:

"No member of congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State."

It is clear that a member of the State Board of Education holds and exercises an office of profit or trust under the State of Texas.

We must determine if membership upon an Alien Enemy Hearing Board constitutes the holding or exercising of an office of profit or trust under the United States. We have concluded that it does not.

This precise question has never been before the courts of Texas. Our conclusion finds substantial support, however, in other jurisdictions.

The case of McIntosh vs. Hutchinson, 59 P. (2d) 1117, by the Supreme Court of Washington, presented the question of whether the acceptance by a State Senator of an appointment as District Supervisor of the Federal Works Progress Administration vacated his office. The constitutional provision involved read as follows:

"And if any person after his election as a member of the Legislature shall be elected to Congress or be appointed to any other office, civil or military, under the Government of the United States, or any other power, his acceptance thereof shall vacate his seat. * * * "

The appointment of the Senator in question was made by the State Director of the Works Progress Administration, the State Director acting under the authority of the Federal Emergency Relief Appropriation Act of 1935, 15 U.S.C.A., par. 728 note. The Federal legislation under which the Director acted in making the appointment created no district or divisional office for the administration of the W. P. A. The division of the state into districts was a mere matter of convenience and, as said by the court, "not required or made mandatory by the law."

The close parallel to the matter before us is obvious. In reaching its decision that the Senator was not appointed to a civil office under the Government of the United States and that his acceptance of employment under the W. P. A. was not the acceptance of a civil office, the court cited the case of Barney vs. Hawkins, 79 Mont. 506, 257 P. 411, 53 A.L.R. 583, and that court's analysis of the authorities upon the question of what constitutes an office, as follows:

State Board of Education, Page 4

"After an exhaustive examination of the author-
ities, we hold that five elements are indispensable
in any position of public employment, in order to
make it a public office of a civil nature: (1) It
must be created by the Constitution or by the Legisla-
ture or created by a municipality or other body through
authority conferred by the Legislature; (2) it must
possess a delegation of a portion of the sovereign power
of government, to be exercised for the benefit of the
public; (3) the powers conferred, and the duties to be
discharged, must be defined, directly or impliedly, by
the legislature or through legislative authority; (4)
the duties must be performed independently and without
control of a superior power, other than the law, unless
they be those of an inferior or subordinate office,
created or authorized by the Legislature, and by it
placed under the general control of a superior officer
or body; (5) it must have some permanency and continuity,
and not be only temporary or occasional. In addition,
in this state an officer must take and file an official
oath, hold a commission or other written authority, and
give an official bond, if the latter be required by
proper authority."

Employing the mechanism of this analysis in its applica-
tion to the appointment of a District Supervisor of the Federal
Works Progress Administration, the Supreme Court of Washington
declared, first, that no office of district supervisor for the ad-
ministration of the W. P. A. had ever been created and the super-
visor was no more than an employee under the State Director;
second, there was no delegation of some part of the sovereign
power of government to the District Supervisor; third, no powers
were conferred and none could be defined; fourth, the District
Supervisor had no duties to perform independently and without the
control of his superior; and fifth, there was nothing to indicate
any permanency or continuity of the appointment in question.

The Washington Supreme Court concluded that it was bound
to hold that the Senator was not appointed to an office because
"the great weight of authority well supports the necessity of meet-
ing all of the conditions laid down by the Montana Court and * * *
it is not made to appear that these conditions, or any of them,
have been here met. * * * "

Of like holding are the cases of Biggs vs. Corley, 172 Atl. 415 (Del.); Curtin vs. State, 214 P. 1030 (Cal.) and Mulnix vs. Elliott, 156 P. 216 (Colo.).

Similar constitutional prohibitions were involved in State vs. Joseph, 78 So. 663, by the Supreme Court of Louisiana. In this case the Clerk of Court and Ex officio Jury Commissioner had been appointed a member of the "local board" created by the act of Congress of May 18, 1917, the selective service law of that war. Speaking of Article 164 of the Louisiana Constitution, which contained a prohibition similar to that under review of the Texas Constitution, the court declared:

"In the instant case it may well be conceived that article 164 of our Constitution was not framed with reference to the existence of a state of war, when it would become necessary for the federal government, in the exercise of the power conferred and of the obligation imposed upon it by the Constitution of the United States, for the preservation of our system of government and the protection of humanity, to avail itself of all the resources at its command, and an exception must be read into that article and into every article of every state Constitution which may be construed as obstructing the exercise of that power and the discharge of that obligation, for the Constitution of the United States is the paramount law of the land, and it confers upon the Congress the power 'to provide for the common defense;' to 'declare war;' to 'raise and support armies;' 'to provide for calling forth the militia to execute the laws of the Union;' 'to provide for organizing, arming, and disciplining the militia and for governing such part of them as may be employed in the service of the United States;' and 'to make all laws which shall be necessary and proper for carrying into execution the foregoing powers.' Const. U.S. Art. 1, § 8. And, in the exercise of the powers so conferred, the Congress has enacted the statute known as the 'Selective Service Law,' which provides for the conscription of citizens of the country for military service at home and abroad, and the conscription, it may be said, of state officers and citizens for the discharge of certain functions connected therewith, as follows:

"    *    *    *

Whereupon the Court answered the following question in the negative:

"The question in this case then is should article 164 of our Constitution be interpreted to mean that a citizen, holding a state office, upon whom, under the Constitution and laws of the United States, additional duties are imposed by the President in aid of the raising and maintenance of an army for the prosecution of a great and necessary war, forfeits his office by reason of his acceptance of that which it would be unlawful and unpatriotic for him to decline?"

This latter language and the Texas Supreme Court case of Carpenter v. Sheppard, 135 Tex. 413, 145 S. W. (2d) 562, was cited with approval by the Supreme Court of California in the case of McCoy vs. Board of Supervisors, 114 P. (2d) 569, decided June 30, 1941. The California Court also declared:

"Not only have State and National legislative bodies been alert to meet the need for special protective measures, but state and Federal courts have kept pace and have evinced a firm intention to take a liberal view of these emergency enactments in order that their protective purposes may be fulfilled without undue imposition of constitutional limitations or hinderance through narrow judicial construction."

Prior thereto, on May 29, 1941, the Supreme Court of California, in Parker vs. Riley, 113 P. 873, upheld a statute providing for the creation of the California Commission on Interstate Cooperation, against the contention that it was unconstitutional because of the following provision of the California Constitution:

"No Senator or member of Assembly shall, during the term for which he shall have been elected, hold or accept any office, trust, or employment under this state; * * * "

The statute creating the commission provided that members of the Senate and Assembly should constitute its membership. It was contended that membership upon the commission constituted an "office, trust, or employment," wherefore members of the Legislature could not lawfully serve in such capacity.

In holding that membership upon the commission was not the holding of an "office" or "trust," the court said:

"It may be noted, however, that the positions
created by the statute here attacked lack certain
elements usually associated with an 'office' or
'trust.'  Thus, it is generally said that an office
or trust requires the vesting in an individual of
a portion of the sovereign powers of the state.
(Citation of authorities)  The positions here created
do not measure up to so high a standard.  They in-
volve merely the interchange of information, the as-
sembling of data, and the formulation of proposal to
be placed before the Legislature.  Such tasks do not
require the exercise of a part of the sovereign power
of the state."

In Gillespie vs. Barrett, 15 N. E. (2d) 513, the Supreme
Court of Illinois held that a constitutional provision prohibiting
state legislators from receiving any "civil appointment" was not
violated by acts creating the Gettysburg Memorial Commission, the
Golden Gate Commission and the New York World's Fair Commission,
to be composed partly of state legislators to serve without sala-
ries.  The court declared that for such an appointment to violate
constitutional provisions of such nature the appointment must be
of a permanent nature and must lend itself to personal aggrandize-
ment with an opportunity for private gain, pecuniary or otherwise.
And the court pointed out:  "The appointments are merely temporary;
the statute forbids the payment of salaries directly or indirectly,
and no policy-making power is delegated.  The members of the com-
mission are merely intrusted with the supervision of the minister-
ial details of a legislative enactment."

The application of these authorities to the question
you have propounded appertaining to Section 12 of Article 16 of
the Constitution of Texas is apparent.  Therefore we hold that this
provision of the Constitution of Texas does not prohibit a member
of the State Board of Education from serving at the same time as
a member of an Alien Enemy Hearing Board, constituted as we have
described.

We regard it as proper to observe that we have consider-
ed the application of Section 40 of Article 16 of the Texas Con-
stitution and are of the opinion that it does not forbid the
memberships under review.

Moreover, in order that the complete ramifications of
this question may have been explored and passed upon, we have also
considered the application of Section 33 of Article 16 to the mat-
ter under review.  This Section reads in part as follows:

"The accounting officers of this state shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, trust or profit, under this State or the United States, except as prescribed in this Constitution. * * * "

Clearly, of course, a member of the State Board of Education is an "agent, officer or appointee" of the State of Texas. We have already decided that membership upon an Alien Enemy Hearing Board is not an "office." It is our opinion, moreover, that it does not constitute a "position" as that term was intended by the framers of the Constitution.

The case of Johnston v. Chambers, 98 S. E. 263, by the Supreme Court of Georgia, arose under the Selective Draft Act of the World War. The Police Commissioner of the City of Atlanta was appointed to the Board of Exemption, constituted in all essentials as the Alien Enemy Hearing Board we are considering. It was contended that the Commissioner became thereby disqualified from holding the office of commissioner under the charter of the City of Atlanta providing as follows:

"It shall be unlawful for any person holding an office or position of trust, or emolument, or regular employment, under appointment by the President of the United States, or any department of the federal government, * * * to occupy or hold the position of mayor, alderman, or councilman of the city of Atlanta, or membership on any executive board of said city, or any other office or position of trust, honor, or emolument, or regular employment in or under said city government, * * * ." (Underscoring ours)

It is observed that the terms "office or position" were present. The court held that the Commissioner was not disqualified, saying in part:

" * * * The duties which those thus called upon were expected to fulfill were of a patriotic nature, from which a citizen could not escape without evading his patriotic duty to aid in a temporary emergency his country and his government, in selecting and organizing an army fit for the high and imperious duty

State Board of Education, Page 9

confronting it.  The duties which these boards were called upon to perform were of the most exalted character, but they were as transitory and ephemeral as they were exalted;; and it was the duty of any citizen called to membership upon one of these boards whether a private citizen or the holder of any office, to lay aside all other duties for the hour and respond to the call.  The court below properly denied the application."

While we think it is manifest that the term "office" and "position" are not synonymous and were not intended to convey the same meaning and contain the same prohibition, we are of the opinion that the difference between the signification of the terms must necessarily be one of degree; that they were used in a relative sense.  Just as an appointment must have a certain dignity to constitute an office, just so must an appointment possess certain essential elements to constitute a position.  See also Reading v. Maxwell, 52 P. (2d) 1155 (Ariz.).

The term "position" implies, among others, stability, compensation, duration.  The absence, or relative absence, of these essentials, appertaining to membership upon an Alien Enemy Hearing Board, is manifest from our review of its origin, status and character.  Particularly controlling are these facts:  membership upon the Board is entirely temporary; its members are engaged in the doing of an emergency service for the Government in time of war; the services performed are essentially desultory, sporadic, occasional; no compensation is paid and there is an absence of permanency and continuity in the Board itself.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Zollie C. Steakley
Assistant

ZCS:ej    APPROVED JAN 24, 1942



