MICHAEL I. FAGEN, RELATOR, v. JOHN H. MORRIS.

Argued February 20, 1912—Decided November 11, 1912.

1. The city clerk of Jersey City is not within the protection of that provision of the Civil Service law which prevents the removal of an officer who is under the civil service, except upon reasons presented to him, and answer made thereto by him.
2. The right of the governing body of a municipality to appoint to an office when the term of the incumbent, as fixed by law, has expired, is not affected by the provisions of the Civil Service law.

On *quo warranto*. Demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and SWAYZE.

For the relator, *Gilbert Collins*.

For the defendant, *Warren Dixon*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The purpose of this proceeding is to obtain a judicial determination of the question whether the relator, or the defendant, is entitled to hold the office of city clerk of Jersey City. That office is created by the charter of the municipality; its term is fixed at one year, and begins on the 1st day of January; it is filled by the appointment of the board of aldermen of the city, to be made by a majority vote of all of its members. The relator was duly appointed to this office on the 1st of January, 1911. A year later, and on the 1st day of January, 1912, the board of aldermen, by a majority vote of its whole membership, appointed the defendant to the office for the then ensuing year.

At the general election held in Jersey City in November, 1911, the voters of that municipality adopted what is known as the Civil Service law (*Pamph. L.* 1908, *p.* 235), and the

contention of the relator is that, by virtue of the adoption of that statute, the term of the office of city clerk of Jersey City became indeterminate in duration, and the incumbent thereof became entitled to hold it until removed, or discharged, after being furnished with written reasons for such action, and an opportunity afforded him to make written answer thereto, as provided by section 24 of that act.

The eleventh section of the Civil Service law provides that the civil service of the state, and of the municipalities thereof, shall be divided into the unclassified service, and the classified service; and then declares that "the unclassified service shall not be subject to any of the provisions of this act, and shall include the following classes"—specifying them. Among the classes so specified are all officers elected by popular vote, all members of commissions or boards elected by the governing body of the municipality, and "all heads of departments" elected by such governmental body. The contention of the defendant, set up in his plea, is that the holder of the office of city clerk of Jersey City is the head of a department, within the meaning of that term as used in the statute; the relator contends the contrary.

The use of the words "all heads of departments" in the statute, as denoting a class other than the governing body itself, or municipal boards or commissions elected by it, carries with it a recognition by the legislature of the fact that the *administration* of the governmental affairs of municipalities is, to some extent, at least, carried on by departments created for the purpose, whose heads are neither the governing body itself (except in a general sense) nor any of its commissions or boards. The charter of the city of Jersey City (*Pamph. L.* 1871, *p.* 1094), in section 29, provides that the city clerk shall have charge of all the records, books, papers and documents of the city, except when otherwise provided by the charter; that he shall countersign all licenses, and all bonds, obligations and other evidences of indebtedness issued by the city or any department thereof, and shall affix the corporate seal thereto; that he shall have the custody of that seal; that he shall be the clerk of the board of aldermen and keep

a record of their proceedings, and engross all the ordinances of such board in the book of ordinances, to be provided for that purpose, with proper indices for each book; that every ordinance shall be signed by the mayor and city clerk, and that such book shall be a public record, and be evidence in all courts and places of the due passage and publication of every ordinance engrossed therein and signed as aforesaid; that copies of any portion of said book certified under the corporate seal and the hand of the clerk shall be evidence of the same facts as the book itself; that certificates signed by the clerk under the corporate seal of the filing of any paper in his office, or of any of the records and proceedings of the board of aldermen, shall be evidence thereof in all courts and places; that the city clerk shall issue all licenses authorized by the charter, and receive the fees payable therefor, which he shall forthwith deliver to the city treasurer whose voucher therefor he shall file in his own office; that he shall perform such other duties as in the charter may be provided; that his office shall be in the city hall; and that he shall give such bond for the faithful performance of his duties as the board of finance and taxation may require. By the act of March 26th, 1907, entitled "An act to regulate the appointment and compensation of clerks and assistants in the office of city clerks in cities of the first class" (*Pamph. L., p.* 34), he is authorized by and with the consent of the board of aldermen, or common council, to appoint such clerks and assistants in his office, and to increase or decrease the number thereof, as the public business may require, and to fix the salaries of such clerks and assistants. By an act approved March 18th, 1895 (*Pamph. L., p.* 330), he is authorized to designate from the clerks in his office a clerk to act as acting city clerk during his absence or disability.

If an office which carries with it the performance of such important duties, which is required to be located in the municipal building, which vests in the incumbent powers of the character above described, does not constitute a department of the city government within the meaning of that term as used in the statute, we are unable to perceive what gather-

ing together of powers and duties would do so. We are satisfied that the city clerk of Jersey City is the head of a municipal department of that city, and is not subject to be placed in the classified service by the civil service commission. and, for this reason, is not within the protection of the provision of the Civil Service law which prevents the removal of an officer who is under the civil service, except upon reasons presented to him and answer made thereto by him.

For another reason the claim of the relator that, by virtue of the provision of the Civil Service law just referred to, he is entitled to remain in the office of city clerk after the expiration of the year for which he was originally appointed is without merit. By the charter of Jersey City, as has already been stated, the term of that office is a fixed and definite one—a year in duration. In the case of *McKenzie* v. *Elliott,* 48 *Vroom* 43, this court held that the incumbents of offices, the terms of which were fixed by statute, were not intended by the legislature, in passing the Civil Service law, to be placed in the "classified service" at the option of the civil service commission—and so be given a tenure of office different from that which the statute fixing the term prescribed—and were not affected by its provisions. Later, the Court of Errors and Appeals, in the case of *Attorney-General* v. *McGuinness,* 49 *Id.* 346, commenting upon this construction placed by us on the Civil Service law, declared that it met with its approval. It must be considered as settled, therefore, until the Court of Errors and Appeals declares otherwise, that the right of the governing body of a municipality to appoint to an office when the term of the incumbent, as fixed by law, has expired, is not at all affected by the provisions of the Civil Service law.

It is suggested by counsel for the relator that, by force of an act of June 14th, 1911, entitled "An act relating to certain officers and employes of various municipalities of the first class, and counties of the first class of this state. abolishing their term of office and prohibiting their removal except for cause" (*Pamph. L., p.* 781), the office of city clerk of Jersey City was changed from one having a definite term to one to be

held by the incumbent during good behavior, and that by reason of this statute the action of the board of aldermen of Jersey City in superseding the relator was without warrant of law. It is enough to say, in disposing of this suggestion, that, by the fifth section of the act referred to, its provisions do not apply to municipalities which, either before or since its passage, have adopted the provisions of the Civil Service law.

The defendant is entitled to judgment on the demurrer.