[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 268 
The complaint herein was filed April 8, 1949, as a proceeding under Rule 3:81, superseding prerogative writs, and by motion made under Rule 3:81-4 the plaintiff applies for summary judgment.
While the complaint does not demand the performance of a ministerial act or duty (and there may be doubt of the applicability of Rule 3:81-4) defendant, allegedly because of the public importance of the controversy and defendant's representation in the briefs submitted on his behalf by counsel that there is imperative necessity for a speedy determination hereof, has interposed and interposes no objection to the procedure employed but, rather, makes a countermotion underRule 3:56-1 for a summary judgment or order in his favor.
Plaintiff is a candidate for the office of Commissioner of the City of Jersey City in the election to be held May 10, *Page 269 
1949. Defendant is the incumbent City Clerk of said city, to which office he was appointed June 17, 1947, by the City Commission.
On April 5, 1949, at defendant's office in the Jersey City City Hall, a drawing was held pursuant to R.S. 40:75-9 to determine the order in which the names of the candidates or groups of candidates shall appear on the ballot to be used at the May 10, 1949, election.
Plaintiff in this proceeding seeks a judgment setting aside the result of said drawing for positions and directing the holding of a new drawing under the supervision of this court.
Defendant's countermotion is that the plaintiff's motion be denied and that a summary judgment be entered in favor of the defendant dismissing the complaint.
The result of the April 5, 1949, drawing was that one Eggers and four others bracketed with him won the first five positions on the ballot. The Eggers group has made timely application underRule 3:24-1, subdivision (1), to be permitted to intervene. That rule and subdivision allow intervention "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." The application has been granted and the Eggers group, through counsel, have participated in these proceedings.
The plaintiff's first ground of challenge of the April 5th drawing is that it was not conducted by the defendant personally in his capacity as City Clerk but by one Rosengard, purporting to be the Acting City Clerk. Defendant, on June 17, 1947, the date of his appointment as City Clerk, designated Rosengard to act as Acting City Clerk during defendant's absence or disability. This was done by a writing addressed to the Board of Commissioners, the original of which was filed with said board and copy of which was filed with Arthur Potterton, Director of Revenue and Finance of the City of Jersey City. This is the only designation at any time made by defendant of Rosengard to act as Acting City Clerk. The designation purports to have been made under R.S.
40:171-117, which authorizes City Clerks in cities of the *Page 270 
first class (and Jersey City is a city of the first class) "* * * to designate from the clerks in his office a clerk to act as acting city clerk during his absence or disability, which designation shall be made in writing and addressed to the board having the control of finances in said city, which designation shall be operative until the resumption of the work of the office by the city clerk." The companion section, R.S. 40:171-118, reads: "That such acting city clerk shall perform all the duties of the office of city clerk during such absence or disability of the city clerk, which said city clerk shall be responsible for the acts and doings of such clerk so designated as acting city clerk."
Plaintiff contends that Rosengard nevertheless had no status to conduct the drawing of April 5th because (1) R.S. 40:75-9 requires that the City Clerk shall personally conduct the drawing; and (2) that if an Acting Clerk may do so defendant must file at or immediately prior to the drawing a special written designation for that purpose based on defendant's absence or disability existing at that time; and (3) that Rosengard was nevertheless not qualified because it has not been shown that prior to his conducting of the drawing on April 5, 1949, he executed and filed the statutory oath of office required byR.S. 41:1-1 and succeeding sections, and R.S. 40:46-19.
It is conceded that on June 17, 1947, at the time of his designation, Rosengard did execute an oath of office which on examination appears to be in substantial compliance with the form required by R.S. 41:1-3.
I do not construe R.S. 40:75-9 as requiring that the defendant personally conduct the drawing. R.S. 40:171-118 expressly provides that an Acting City Clerk when properly designated by a City Clerk "* * * shall perform all the duties of the office of city clerk during such absence or disability * * *." The pertinent inquiry thus becomes the effect and scope of defendant's June 17, 1947, designation of Rosengard. It seems to me that R.S. 40:171-117 is to be interpreted as authorizing the City Clerk to designate an Acting City Clerk who shall act as such at any time or times *Page 271 
during the term of office of the City Clerk when the City Clerk is absent or disabled, and that such designation is operative in each such period and in suspense at all other times when the City Clerk is himself conducting the work of his office. The multiplicity and importance of the duties of the Jersey City municipal clerk are referred to and detailed at length in the case of Fagen v. Morris, 83 N.J.L. 3; affirmed, 84 N.J.L. 759. There are vested in him by statute and the charter of the City of Jersey City, according to that authority, powers of such importance that he is in fact head of a major department of the municipal government. Obviously, his absences, however brief or protracted, seriously interfere with the conduct of public business. The statute authorizing him to designate an Acting City Clerk from among what must be numerous clerks in his office was patently enacted (and it goes back to 1895) to assure that the routine and important work which defendant is responsible to perform would not be delayed, to the embarrassment or inconvenience of the public, by his absence or disability. Viewed in that light there can be little question that a general designation is all that is contemplated by the statute.
But the plaintiff says that, even so, Rosengard had no status on April 5th because it does not appear that he had executed a statutory oath of office prior to his functioning in the conduct of the drawing held April 5, 1949. What has already been said as to the construction of R.S. 40:171-117 would appear equally to apply here, if there is any requirement that an Acting City Clerk take an oath of office. It appears, as heretofore mentioned, Mr. Rosengard did execute a form of oath on June 17, 1947, and that the oath executed does substantially conform to the statutory requirement in that regard. But is the post of Acting City Clerk an office within the meaning of the statutes which require the execution of statutory oaths? R.S. 41:1-3 provides: "* * * every person elected or appointed to any public office in this state or in any county or municipality therein * * *" shall execute the statutory oath. R.S. 40:46-19, also relied on by the plaintiff provides: "* * * every person elected or appointed *Page 272 
to any office in any municipality shall, before assuming such office, * * *" execute the oath required by that section. If the post of Acting City Clerk is not an office within the meaning of those statutes, clearly the statutory oaths are not required of the incumbent. First of all, the regular and permanent position of an Acting City Clerk is that of the ordinary ministerial or administrative clerical employee, because the statute says specifically that the designation of Acting City Clerk shall be "* * * from the clerks * * *" in the City Clerk's office. It is agreed here that Mr. Rosengard's regular position is that of chief clerk in the office of the City Clerk and that the post of chief clerk is one included in the classified civil service. Secondly, the Acting City Clerk serves only if the City Clerk is himself not there; and, thirdly, and perhaps dispositive of the question, the City Clerk is expressly made responsible by the statute "* * * for the acts and doings of such clerk so designated as acting city clerk." It seems to me that, at most, the post of Acting City Clerk is a position and not an office, and where that is the case it is well settled in our authorities that the obligation to execute a statutory oath does not apply. The question was squarely raised in Camden v. Civil ServiceCommission and Shepp, reported at 129 N.J.L. 354. There the issue was whether an assistant city counsel of the City of Camden was qualified as such since it appeared he neither took nor filed the oath of allegiance or oath of office prescribed by the statutes we have been discussing. It was held that the statutes required the execution of such oaths only by persons appointed to offices and that inasmuch as the post of assistant city counsel was, in the court's view, a position and not an office there was no requirement that one appointed assistant city counsel execute the statutory oath; and the court defined the distinction to be made in determining whether a post was an office or a position, saying at page 356: "* * * an office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof continuous performance of certain permanent *Page 273 
public duties * * *." There isn't any question that the duties discharged by an Acting City Clerk in the absence or disability of the City Clerk are permanent in the sense that the duties must constantly be discharged if the municipal business is effectively and efficiently to be disposed of. But the missing factor in this situation, in order to qualify the post of Acting City Clerk as an office, is the requirement to satisfy that definition, that the performance of the duties be continuous. Here the performance is sporadic, depending entirely on the absence of the City Clerk, and the duties are performed only in the absence or disability of the City Clerk.
I, therefore, conclude that Rosengard had full authority to conduct the drawing held April 5, 1949, and that plaintiff's challenge on that ground must fail.
I turn now to plaintiff's second ground. It is that one Introcaso, also a candidate in the municipal election of May 10, 1949, resigned as such on April 5, 1949, prior to the drawing on the afternoon of that day and that Rosengard illegally refused to accept the written resignation tendered to him by Introcaso and inserted a slip bearing Introcaso's name in the box used for the drawing. The slip which contained Introcaso's name was the second slip drawn from the box and the name was given the sixth place on the ballot immediately following the five names of the Eggers group.
I need not, and do not, decide in this case whether Introcaso's resignation was properly or improperly rejected. Even assuming that the rejection was wrongly refused (See Conroy v. Nulton,134 N.J.L. 471) and that the slip bearing Introcaso's name should not have been included with the six other slips in the box, the question here is not whether Introcaso may have his name stricken from the ballot but whether the draw was illegal and should be set aside.
Introcaso is not a party to this suit. It is the plaintiff who claims that the rights of himself and the others bracketed with him were prejudiced by the allegedly improper inclusion in the box of the slip bearing Introcaso's name. But I cannot find that this was prejudicial to any rights of the plaintiff or his associates. There were actually seven slips in the box. *Page 274 
He says there should have been only six. Mathematically, however, his chance that his slip would be the first drawn was no better or worse relative to the five slips other than Introcaso's, whether that slip was included or excluded from the box. With seven in the box the odds that his would be the first drawn was one to seven — but these were the precise odds that confronted Yengo, Banach, Longo, Eggers and Mueller and their slips. Had there been only six the relative chances of each would again have been mathematically identical.
In these circumstances I think R.S. 40:75-16 should guide my course. It provides: "No informalities in conducting a municipal election shall invalidate the same if conducted fairly and in substantial conformity with the requirements of law." While it may be argued that that section is specifically applicable only to the municipal election on election day, it seems to me it may fairly be interpreted as applying to all of the concomitants of that election and the events leading up to it.
I, therefore, conclude that the second ground of plaintiff's motion is untenable.
The third ground is raised by paragraphs ten, eleven, and twelve of the complaint, which read:
"10. Paper cards containing the names of the duly filed candidates together with the name of the withdrawn candidate, Nicholas Introcaso, were placed in a covered box furnished by the alleged Deputy City Clerk which box purported to comply with the statute.
"11. The said box was not just a covered box with an aperture in the top large enough to allow the cards to be drawn therefrom but rather was one of improper construction and design so that it was possible to defeat the intention of the Legislature in that the Municipal Clerk shall draw from the box each card without knowledge on his part.
"12. Said box provided for the drawing had inserted therein a structural panel that permitted the drawer a chance to make an unfair draw and select the card he desired and the said alleged Deputy City Clerk Ben Rosengard contrary to law and with knowledge of said condition made an unfair draw *Page 275 
selecting the card he desired to the prejudice, detriment and disadvantage of the other candidates."
In the course of this proceeding counsel for the plaintiff has stated that he limits this ground to the allegation that the box used in the conduct of the draw did not comply with the statute making provision for the use of such box. He has advised the court that for the purpose of this proceeding he abandons any ground expressed or intimated in the quoted paragraphs of the complaint relating to the manner of the conduct of the draw by Rosengard or any others who participated in the conduct of the draw.
The court, being informed that the box in question was in the possession of the Prosecutor of the Pleas of Hudson County, directed the production by the prosecutor of the box and the court has received it in custodia legis, to remain in the custody and control of the court until released by order of the court. At the request of the parties, the court has examined the box and stated for the record his findings in that regard. The statute prescribing the type of box to be used in the draw isR.S. 40:75-9, which reads: "* * * The manner of drawing by lot shall be as follows: Paper cards with the name of each candidate or group of candidates written thereon shall be placed in a covered box with an aperture in the top large enough to allow the cards to be drawn therefrom. * * *."
I find as a fact upon examination of the box employed in the draw that the box is a covered box and that it has in the top an aperture large enough to allow the cards to be drawn therefrom. I further find that the box employed complies with the statutory requirement in respect of the type of box to be used.
Thus, I conclude that the third ground of the plaintiff's application is also untenable.
I shall make an order denying plaintiff's motion for summary judgment, and granting the defendant's motion for summary judgment and sign an order dismissing the complaint and proceedings herein.
Submit order. *Page 276