

THE ATTORNEY GENERAL

OF TEXAS

Austin 11, Texas

WAGGONER CARR
ATTORNEY GENERAL

October 15, 1965



Hon. Ben Ramsey, Chairman
Railroad Commission of Texas
Tribune Building
Austin, Texas

Dear Mr. Ramsey:

Opinion No. C- 527

Re: Reconsideration of Attorney
General's Opinion WW-201,
relating to the question of
whether a Railroad Commis-
sion employee may also serve
as a joint board member for
the State of Texas under
appointment by the Inter-
state Commerce Commission.

You have requested a reconsideration of Attorney General's
Opinion WW-201 (1957) which held:

> "A substitute member of a joint board
> appointed by the Interstate Commerce Com-
> mission under the provisions of Title 49,
> U.S.C.A., Section 305 (Interstate Commerce
> Act, Part II) holds an office of honor and
> trust under the United States Government
> and while serving as a member of a joint
> board he cannot receive any salary or
> compensation for his services as an examiner
> for the Railroad Commission of Texas under
> the provisions of Article XVI, Section 33
> of the Constitution of Texas. The office
> of a joint board member and the position of
> an employee of the Railroad Commission of
> Texas are not incompatible."

An analysis of the provisions of Section 33 of Article
XVI of the Constitution of Texas, the cases construing Sections
12, 33 and 40 of Article XVI of the Constitution of Texas, and
opinions of this Office on the subject of dual officeholding
in Texas leads to the conclusion that Attorney General's Opinion
WW-201 should be overruled for the reasons hereinafter discussed.

The proper characterization of the service performed by a
joint board member is that of research, advice, and recommen-
dation for orders to be officially promulgated and enforced by
the Interstate Commerce Commission. The decision making and

enforcement of orders is the exercise of federal sovereign powers by the Commission. 49 U.S.C.A., Ch. 8, Sects. 303, 305. Although the duties of hearing evidence and making recommendations from findings may be likened to that of an officer of the court, such as a Master in Chancery, it is held that such officers of a court are not deemed to be holding an office or analogous position under the United States in the sense of dual office holding. See Benjamin Watkins Leigh's Case, 15 Va. 468 (1810), National Sav. Bank of D. of C. v. Ward, 100 U.S. 195 (1879) and Kimberly v. Arms, 9 S.Ct. 355, 359, 129 U.S. 512 (1889).

It thus appears that the joint board member for the State of Texas has not been delegated any federal sovereign powers to exercise, his duties are sporadic, and he receives no salary or compensation for such service. His service may not be characterized as rising to the dignity of an office or position of honor or trust under the United States. Although his service might be said to be an additional duty imposed upon him as an employee of the Railroad Commission, he is nevertheless not serving in such capacity as an office or position of honor or trust under the State of Texas.

The key to any decision to the question propounded lies in the construction of the intent or meaning of the words "Office of profit or trust, under the United States," as used in the Texas Constitution in Sec. 12 of Art. 16, or "Civil Office of emolument," as used in Sec. 40 of Art. 16, or "office or position of honor, trust or profit under . . . the United States," as used in Art. 16, Section 33. It is evident that the real intent of these sections of the Constitution was to prohibit dual office holding, whether the public "office" or "position" be one of "profit" or "emolument" or merely one of "trust" or "honor." These were additional strictures inserted therein for implementing the fundamental rule of law in this country forbidding one person from holding at one time two public offices or positions, the duties of which were incompatible or against public policy and which is applicable whether or not named in the exceptions in the Constitution. Biencourt v. Parker, 27 Tex. 558; State v. Brinkerhoff, 66 Tex. 45; Thomas v. Abernathy County Line Independent School Dist., 290 S.W. 152; Pruitt v. Glen Rose Independent School Dist., 84 S.W.2d 1004; Knuckles v. Board of Education of Bell County (Ky.), 114 S.W.2d 511, 514; 22 R.C.L. 414, par. 56; Atty.Gen. Opinions Nos. V-63; 0-5145; 0-4957.

Section 33 of Article 16 of the Texas Constitution provides,

"The Accounting Officers of this State
shall neither draw nor pay a warrant
upon the Treasury in favor of any
person, for salary or compensation
as agent, officer, or appointee, who
holds at the same time any other office
or position of honor, trust or profit,
under this State or the United States,
except as prescribed in this
Constitution. . . ." (emphasis added)

This Section was not included in the Constitution of 1876 as a safeguard against a recurrence of the evils and abuses of the "carpetbag" era, since it made its first appearance in the Constitution of 1869, a constitution drafted by Reconstruction Republicans, and its policy reasons are at best conjectural. See Vol. 43, Tex.Law Review, p. 951; Tex.Const. Art. XII, Sec. 42 (1869).

The only policy basis for the section has been stated to be that of insuring full value for state services rendered in the payment of salary or compensation out of state monies. Thus the safeguard was aimed at preventing a person from holding at the same time two state offices or positions, or a state and federal office or position, the effect of which would cause that person to divide his time and fidelity, to the detriment of his state service. See Attorney General Opinion No. O-2607 (1940); Vol. 43, Texas Law Review, p. 952.

In construing the meaning of the Constitutions and statutes, a court will never adopt a construction that will make them absurd or ridiculous or one that will lead to absurd conclusions or consequences if the language of the enactment is susceptible of any other meaning. 53 Tex.Jur.2d 241, 243, Sec. 165, Statutes.

Furthermore, wherever possible, that construction shall be adopted which shall promote the public interest in accord with sound economic or governmental policy. State v. DeGress, 72 Tex. 242, 11 S.W. 1029 (1888).

In view of the urgent policy arguments against a too narrow and restrictive construction of Section 33, as set out in Vol. 43, Texas Law Review, pages 952-955, it seems clear that a liberal rather than a technical, narrow construction should be indulged so as to permit state employees to render valuable and beneficient service through intergovernmental cooperation on

advisory or study committees. This is in the best interest of state government, and it would be unreasonable to impute a meaning to the Constitution which would lead to the opposite conclusion. In other words, a strict construction should be given to the words "office or position of honor or trust" so as not to hold anything to be within the prohibition unless clearly expressed and named and not to expand it by implication or construction. Commonwealth, ex rel Bache v. Binns, 17 Sergeant & Rowles Rep. 219 (1828).

Generally, in arriving at the meaning of the Constitution, we find it should not be given a "narrow or technical construction" but it is to be given a "liberal meaning in order to effectuate the purpose of the provision of which it is a part" and "words will be considered to have been used in their natural sense and ordinary signification, unless the context indicates the contrary." 12 Tex.Jur.2d 362-363, Sec. 14; p. 364, Sec. 16, Constitutional Law, and cases there cited. Furthermore, it is to be construed to meet changed conditions as they arise. Koy v. Schneider, 110 Tex. 369, 221 S.W. 880 (1920).

The words in the phrase "Office or position of honor, trust, or profit under the United States," are each words having a meaning ascertainable by reference to the other words with which they are associated under the maxim, noscitur a sociis. 53 Tex.Jur.2d 221, Sec. 154, Statutes.

Since the appointment to the Joint Board is without compensation, it is unnecessary to discuss whether it is an office or position of "profit" or "emolument" under the United States. In this connection, the payment of "expenses" is to be distinguished from "compensation." "Compensation" is synonymous with salary, pay, or emolument and is intended to convey the idea of reward or compensation for official services; it does not convey the idea of re-payment of out-of-pocket expenditures or expenses, such as traveling and subsistence while away from home and in performance of duty, which may be allowed by law. Terrell v. King, 118 Tex. 237, 241, 14 S.W.2d 786, 791 (1929), State v. Aronson, 314 P.2d 849, 853 (Sup.Ct., Montana 1957), and many cases there cited.

The question is thus narrowed to a determination whether it would be such an office or position of honor or trust within the constitutional meaning. Even though the committee be created by Congress and be subject to some quasi-governmental supervision, through audit and by report to Congress, this would not constitute a member thereof, with principal duties of recommendation, research, study, and advice, the holder of an

office or position of honor and trust under the United States within the purview of the meaning of such terms as used in the above provisions of the Constitution.

Thus, unless it is an office or position of honor or trust under the United States within the sense intended or meant by the Constitution, a state employee may serve in such a capacity and still draw his salary from the Comptroller.

The words "office or position of honor or trust" as used in Section 33 of the Constitution should be held to have been used analogously, and as having the same characteristics and general though not identical meaning, when given a practical, natural, ordinary, and reasonable construction. Webster's Third New International Dictionary, p. 1769; Black's Law Dictionary, 4th Ed., p. 1234, 33 Words & Phrases, p. 53, "Position;" and cases there annotated. The authorities hold that a "position" is analogous to an "office" in that the duties that pertain to it are permanent and certain. The same essentials, attributes, and characteristics are present insofar as the duties are governmental. Frazier v. Elmore, .180 Tenn. 232, 173 S.W.2d 563, 565; Fredericks v. Board of Health of Town of West Hoboken, 82 A.528, 529, 82 N.J.L. 200; Risley v. Board of Civil Service Comr's. of City of Los Angeles, 140 P.2d 167, 169, 60 Cal.App.2d 32; Murphy v. Board of Chosen Freeholders of Bergen County, Sup., 163 A. 555, 556, 110 N.J.L. 9.

An "office" means "place" or "position" and they are deemed analogous and interchangeable as understood in law. 29 Words & Phrases, p. 270, under "Office -- Place or position;" and 1965 Pocket Part pp. 97-98 and cases there annotated.

As stated in 22 R.C.L. 383, Sec. 16, Public Officers,

> "Constitutions and laws sometimes contain provisions applying to offices of trust or honor and offices or places of trust or profit. The line between 'offices' and 'places of trust or profit' within the meaning of such provisions has not been clearly marked, and they may be considered as approaching each other so closely that they are in all essential features identical. A place of trust or profit is not, however, identical with an office, yet it occupies the same general level in dignity and importance. . . ."

We have, therefore, heretofore correctly held on this subject in Opinion No. O-5341, dated July 19, 1943, that there is no material legal distinction in meaning as to essential characteristics between the term "office and position of honor or trust" and that as used in our Constitution, "'office under the United States' means that the holder thereof must exercise some governmental function, or be the depository of some sovereignty of the United States (Federal Government) before it rises to the dignity of an 'office' under the United States. There must be delegated to the person holding such 'office' some of the sovereign functions of the United States Government. There are several persuasive, though not conclusive, characteristics of what constitutes a public office; or to express it in another way, what constitutes holding an 'office under the United States.' We mention a few: Tenure and duration, oath of office, official bond, etc. But one indispensable characteristic, as the cases hereafter noted affirm, is that the duties performed shall involve the exercise of sovereign power, whether great or small. Our own Supreme Court, in a comparatively early case, Kimbrough v. Barnett, 93 Texas 301, 55 S.W. 120, quoted with approval Mechem on Public Officers as follows:

> "'A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.'"

In the above Opinion No. O-5341, and from the authorities we found that "office" had a definite legal meaning in the sens: employed in the Constitution:

> "'The term "office" implies a delegation of a portion of the sovereign power to, and possession of, it by the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional or incidental employment. A person in the service of the government who derives his position from a duly and legally authorized election or appointment, whose

Hon. Ben Ramsey, Page 7    Opinion No. C-527

> duties are continuous in their nature
> and defined by rules prescribed by govern-
> ment, and not by contract, consisting of
> the exercise of important public powers,
> trusts, or duties, as a part of the
> regular administration of government, the
> place and the duties remaining, though the
> incumbent dies or is changed, every office
> in the constitutional meaning of the term
> implying an authority to exercise some
> portion of the sovereign power, either in
> making, executing or administering the
> laws.  Mechem on Public Officers, ◊ 1-9.'"

The recent case of Willis v. Potts (1964), 377 S.W.2d 622, by the Supreme Court of Texas, construing Art. 3, Sec. 19, and Art. 11, Sec. 5 of the Constitution, held that a City Council-man of the City of Ft. Worth held an "office under the State." Utilizing the reasoning of the earlier decisions, the Court's decision is in harmony with our Opinion and not in conflict with it or the distinction sought to be made.

Those authorities so construing the meaning of "office" or "position" as comprehending continuous performance of defined permanent public duties, compensation, tenure, exercise of sovereignty, and other essential requisites are in accord and are thoroughly discussed and briefed in our Opinion O-5341. See Witkowski v. Burke, 65 A.2d 781; Sowers v. Wells, 150 Kan. 630, 95 P.2d 281, 284; Abbott v. McNutt, 218 Cal. 225, 22 P.2d 510, 89 A.L.R. 1109; Howard v. Saylor, 305 Ky. 504, 204 S.W.2d 815; United States v. David Mouat, 124 U.S. 303, 307, 81 L.Ed. 463; People ex rel Attorney General v. Leonard, 14 P. 853; In Re Doe's Estate.  In Re. Wheeler.  Mallory, as Public Adm'r. v. Wheeler, 138 N.W. 97; Patten v. Miller, 8 S.E.2d 757, wherein the Supreme Court of Georgia approved of a state employee (member of the Highway Board) holding at the same time a position as a member of the Advisory Committee of the Atlanta Agency of the Reconstruction Finance Corporation, the Court holding that his office "is not an office of profit or trust under the Government of the United States"; Hartigon v. Board of Regents of West Virginia University, 38 S.E. 698; Hirsch-feld Commonwealth ex rel Attorney General, 76 S.W.2d 47 (Ky.); State ex rel v. Hawkins, 257 P. 411, 53 A.L.R. 583; and Kingston Associates v. La Guardia, 281 N.Y. Supp. 390, wherein it was held that members of the Advisory Committee on Allot-ments, created by the President of the U. S., were not holding an "office of honor, trust, or emolument under the government of the United States."  The Court said:

> "'Clearly, the members of the Advisory
> Committee on Allotments possess none of
> the powers of the sovereign. They
> perform no independent governmental
> function. Such function in general is
> either legislative, judicial, or executive.
> It is too plain to require discussion
> that the Advisory Committee exercises no
> legislative or judicial prerogatives. It
> appears to be fairly evident that it like-
> wise possesses no powers of the executive
> . . . . The committee thus lacks the most
> important characteristic or attribute
> associated with the idea of public office,
> namely, the right to exercise some part
> of the power of the sovereign.'"

Opinion O-5341, of July 19, 1943, that a District Attorney could receive his salary and also serve as Chairman of the Local Chapter of The American National Red Cross, a Corporation chartered by Congress, because the latter was not an office or position under the United States, is consistent with our earlier Opinion No. O-5314, of July 2, 1943, holding that a state or county official could not be excluded from drawing his salary while serving as a member of an advisory board for registrants, the latter not being a position of honor, trust or profit under this State or the United States within the contemplation of our Texas Constitution.

Our still earlier Opinion No. O-4458, of April 8, 1942, holding that a state employee could serve without loss of salary as a member of a County Tire Rationing Board for the same legal reasons is likewise consistent with the above Opinions.

Our earlier and thoroughly considered Opinion No. O-4313, of Jan. 24, 1942, written by Zollie C. Steakley, now a member of the Texas Supreme Court, is likewise consistent with the above opinions in holding that a state employee (member of State Board of Education) could still draw his salary and serve on an Alien Enemy Hearing Board, created by the federal govern- ment through the U. S. Attorney General, paying only nominal compensation but requiring the member to take an oath. The Board appointment was temporary, for an indefinite term, with only occasional meetings and sporadic activities. It was merely a fact finding and advisory administrative instrumen- tality, which could neither make nor enforce decisions. We expressly held that membership upon such a Board, which would

be presumably identical to a National Study Committee, did
not constitute the holding or exercising of an office of
trust, honor, or profit under the United States. We there
held that "it does not constitute a 'position' as that term
was intended by the Framers of the Constitution."

The precise question has still never been determined by
a Texas court but other jurisdictions are in general accord
with our cited holdings.

In McIntosh v. Hutchinson, 59 P.2d 1117, the Supreme Court
of Washington held that a State Senator could still draw his
salary and serve as a "District Supervisor" of the Federal
Works Progress Administration, which was not deemed to be the
acceptance of a "civil office," citing Barney v. Hawkins, 79
Mont. 506, 257 P. 411, 53 A.L.R. 583, as to the meaning of
the term "office," to-wit:

> "After an exhaustive examination of the
> authorities, we hold that five elements
> are indispensable in any position of
> public employment, in order to make it a
> public office of a civil nature: (1) It
> must be created by the Constitution or
> by the Legislature or created by a
> municipality or other body through authority
> conferred by the Legislature; (2) it must
> possess a delegation of a portion of the
> sovereign power of government, to be
> exercised for the benefit of the public;
> (3) the powers conferred, and the duties
> to be discharged, must be defined, directly
> or impliedly, by the legislature or through
> legislative authority; (4) the duties must
> be performed independently and without
> control of a superior power, other than the
> law, unless they be those of an inferior
> or subordinate office, created or authorized
> by the Legislature, and by it placed under
> the general control of a superior officer or
> body; (5) it must have some permanency and
> continuity, and not be only temporary or
> occasional. In addition, in this state an
> officer must take and file an official oath,
> hold a commission or other written authority,
> and give an official bond, if the latter be
> required by proper authority."

The Court concluded that the Senator was not appointed to an office since "the great weight of authority well supports the necessity of meeting all of the conditions laid down by the Montana Court and . . . it is not made to appear that these conditions, or any of them, have been here met . . .".

In accord and involving similar questions and constitutiona prohibitions are Biggs v. Corley, 172 Atl. 415 (Del.); Curtin v. State, 214 P. 1030 (Cal.); Mulnix v. Elliott, 156 P. 216 (Colo.); State v. Joseph, 78 So. 663 (La.); McCoy v. Board of Supervisors, 114 P.2d 569, citing Carpenter v. Sheppard, 135 Tex. 413, 145 S.W.2d 562, for the necessity of taking a liberal view toward the encouragement of such enactments that their protective purposes "may be fulfilled without undue imposition of constitutional limitations or hiderance through narrow judicial construction."

In Parker v. Riley, 113 P.2d 873, 875, 876, 18 Cal.2d 83, 134 A.L.R. 1405, the California Supreme Court upheld a statute providing for the creation of the California Commission on Interstate Cooperation and providing for members of the legislature to serve thereon. Although the Constitution expressly prohibited the members from accepting "any office, trust, or employment under this state," the Court held that the constitutional meaning of "office" or "trust" was not applicable thereto as follows:

> "'It may be noted, however, that the positions created by the statute here attacked lack certain elements usually associated with an "office" or "trust". Thus, it is generally said that an office or trust requires the vesting in an individual of a portion of the sovereign powers of the state. (Citation of authorities) The positions here created do not measure up to so high a standard. They involve merely the interchange of information, the assembling of data, and the formulation of proposal to be placed before the Legislature. Such tasks do not require the exercise of a part of the sovereign power of the state.'"

The Riley case doctrine was recently recognized and reaffirmed by the Supreme Court of California in State v. Aronson, 314 P.2d 849, 856-857 (1957). In accord, see also Gillespie v. Barrett, 15 N.E.2d 513 (Ill.); Johnson v. Chambers, 98 S.E. 263 (Ga.); and Reading v. Maxwell, 52 P.2d 1155

(Ariz.), for the proposition that certain essential elements are required to constitute an "office" or "position" as used in such constitutional sense and the meaning of these terms as so used do not preclude the acceptance of such duties and service involving honor and trust and from which any citizen could not escape without evading his civic or patriotic duty to aid his government or country in times of temporary emergencies.

The term "office or position of honor or trust" therefore necessarily implies, among other elements, compensation, stability, duration, permanency, continuity, taking oath and giving bond, and the making and administering of governmental decisions independently and without control of a superior power, etc.  The substantial absence of these essentials appertaining to membership on the Joint Board frees a state employee from the constitutional inhibition to such service while continuing to draw his state salary.  We do not believe that the constitutional framers in 1869 intended by their use of the words being construed to prohibit state officers and employees from rendering free beneficial service to the public on such advisory boards in furtherance of their state duty and in the interest and betterment of their federal government and its administration.

If there are other Attorney General's Opinions which necessarily conflict with this Opinion in its result and holding, they are overruled.  However, all of the Attorney General Opinions appear to have involved different facts or circumstances, such as the holding of two public "offices" or "positions" of honor, trust, or profit, two offices deemed incompatible at common law.  They are thus distinguishable.

For example, in Opinion No. O-1898, of February 19, 1940, it was held that a State Health Officer or employee could not accept a commission from the Secretary of Agriculture under Sec. 702(a) of the Federal Food, Drug and Cosmetic Act and thereby became an officer authorized to conduct examinations and investigations in administering the act.  Such would be a position of honor or trust under the United States within the constitutional meaning of the terms, though no compensation was payable therefor.  Likewise, in Opinion No. O-58, of February 14, 1939, we held that the position of "Special Agent" of the Bureau of Census was one of honor, trust, or profit under the United States, prohibiting the State Registrar from accepting same and drawing his state salary.  Also, in Opinion Nos. O-5232 and O-5107, we held on the same grounds that the President of the College of Mines and Metallurgy as well as a District Judge could not accept the position of Public Panel

Member of the Eighth Regional War Labor Board, which apparently required the making and carrying out of governmental decisions and exercise of sovereignty, as distinguished from mere investigative and advisory functions.

We held in Opinion O-2226, May 23, 1940, that a member of the County Board of School Trustees could not also serve as a member of the local community committee of the Agricultural Adjustment Administration, created by Congress, and by which the committeemen were elected by majority vote of the producers in the county to serve a definite term and/or until their successor was elected, and were paid at a certain per diem for each day served. Here, they apparently made decisions and administered the program, and we pointed out that while the taking of an oath was not an "indispensable criterion" to constitute the appointment, an "office" or "position" under the case holding of Commissioners Court of Limestone County v. Garrett (Com.App.), 236 S.W. 970, 972, nevertheless, the committeeman "meets the prescribed essentials as an 'officer' and holds an 'office' within the contemplation of our constitutional inhibitions." Thus this opinion does not conflict with the other Attorney General Opinions cited above but is in harmony with them and clearly distinguishable.

Our Opinion No. V-740, dated December 16, 1948, written by Ode Spoan, which cites and refers to many other of our opinions on the point as as this very distinction in duties in considering whether a state employee can serve also as a Weatherman for the federal government:

> "The accounting officers of this State may not pay a state employee from the Treasury who holds at the same time a position of honor, trust, or profit with the U. S. Government. If the U. S. Weatherman in question holds such a position he should not be paid for his state employment. If he is simply an unpaid observer, who holds no appointment, Section 33 has no application, and he may be paid for his state employment. Art. XVI, Sec. 33."

## S U M M A R Y

The substitute member of a joint board appointed by the Interstate Commerce Commission under the provisions of Title 49, U.S.C.A., Section 305 (Interstate Commerce Act, Part II), does not hold an office of honor, trust, or profit under the United States Government and while serving as a member of a joint board he can receive his salary or compensation for his services as an examiner for the Railroad Commission of Texas under the provisions of Article XVI, Section 33 of the Constitution of Texas. The office of a joint board member and the position of an employee of the Railroad Commission are not incompatible. Opinion WW-201 is overruled.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By Kerns B. Taylor
Kerns B. Taylor
Assistant Attorney General

KBT:dl

APPROVED:
OPINION COMMITTEE:

W. V. Geppert, Chairman
Arthur Sandlin
Roger Tyler
Bob Flowers
Jerry Brock
H. Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
BY:   T. B. Wright